UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FILED
U.S. BANKRUPTCY COURT
EASTERN & WESTERN DISTRICTS
OF ARKANSAS
01/08/26      2:51 pm
LINDA McCORMACK, CLERK
By:  LisaWilliams
DEPUTY CLERK

IN RE:
ALLISON NICOLE LAMB,
DEBTOR

CASE NO: 5:25-bk-72184
CHAPTER 7

DART SUPPLEMENT SOLUTIONS, LLC, PLAINTIFF

V.                                    ADV. PROC. NO. _____

ALLISON NICOLE LAMB, DEFENDANT

## ADVERSARY COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT
## (11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6))

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. Venue is proper pursuant to 28 U.S.C. § 1409.

### II. PARTIES

4. Plaintiff, Dart Supplement Solutions, LLC ("Plaintiff"), is an Arkansas limited liability company engaged in insurance claim inspections, estimating, and supplement preparation, including the pursuit of general contractor overhead and profit ("O&P") where warranted.

5. Defendant, Allison Lamb ("Defendant"), is an individual debtor in the above-captioned Chapter 7 case.

6. At all relevant times, Debtor owned, controlled, and operated Infinite Roofing ("Infinite").

7. Debtor personally guaranteed payment for Dart's services.

### III. FACTUAL ALLEGATIONS

A. **Prior Course of Dealings and Knowledge**

8. Prior to March 2024, Dart worked with Defendant for years through a prior business entity in which Defendant was an owner or partner.

9. During that relationship, Dart regularly requested and obtained overhead and profit on qualifying claims with Defendant's full knowledge and approval.

10. When Defendant formed Infinite Roofing in March 2024, she engaged Plaintiff with full knowledge of Plaintiff's practices, including GC-level estimating and pursuit of overhead and profit.

11. Defendant affirmatively represented that Infinite Roofing was a licensed general contractor authorized to perform work requiring general contractor oversight.

12. Defendant made these representations orally and in writing, including in contractors, communications and submissions made in connection with insurance claims supported by Plaintiff.

13. These representations were material, as Plaintiff's services – and the recoverability of general contractor overhead and profit depended on the trust of proper licensure status.

14. At the time the representations were made, Infinite Roofing nor Defendant were licensed as a general contractor.

15. Debtor knew and should have known that these representations were false.

B. **Tornado Event and June 14, 2024 Authorization**

16. In May 2024, a catastrophic tornado impacted the region.

17. Defendant affirmatively requested that Plaintiff handle Infinite Roofing's large loss tornado claims.

18. On June 14, 2024, Plaintiff sent a detailed written communication to Defendant outlining:

    - Full exterior and interior inspections;
    - Multi-trade and large-loss estimating;
    - Increased fees for large-loss work;
    - Follow-up inspections after mitigation;
    - Cash-flow risks and expectations regarding timely payment.

19. Plaintiff expressly required confirmation of the process, payment terms, and capability of meeting all payment terms before proceeding.

20. Defendant responded in writing, confirming agreement with the outlined terms and authorizing Plaintiff to proceed.

21. Plaintiff justifiably relied on Defendant's representation in agreeing to provide services and in continuing to provide services over a prolonged period.

22. Based on Defendant's misrepresentations, Plaintiff performed substantial services that generated insurance recoveries, including general contractor overhead and profit, for Infinite Roofing's and/or Defendant's benefit.

23. Plaintiff recovered more than $742,000.00 on behalf of Defendant and submitted invoices totaling $83,129.54 for services rendered and costs advanced on behalf of Defendant. Defendant paid the sum of $32,347.55 leaving a balance owed of $50,781.99.

24. Defendant failed and refused to pay Plaintiff despite demand.

25. Plaintiff has been damaged in an amount not less than $50,781.99, exclusive of interest, attorneys' fees, and costs.

### C. Multi-Trade Inspections and Estimating

26. Between June and October 2024, Plaintiff conducted inspections with Defendant and/or her representatives involving multi-trade and non-roof related storm damage, including properties where roofing work had already been completed.

27. These inspections included electrical, structural, interior, and exterior damages which would require general contractor oversight.

### D. Overhead and Profit Requests, Notice, and Silence

28. Between July and October 2024, Plaintiff requested overhead and profit on qualifying claims.

29. Plaintiff documented each supplement in Defendant's Acculynx account, including:

    - Original estimate amount;
    - Supplement amount;
    - Updated estimate amount;
    - Whether overhead and profit were requested or awarded.

30. Defendant was tagged and notified of each entry.

31. Overhead and profit was awarded on multiple claims.

32. Defendant never objected, never instructed Plaintiff to stop requesting overhead and profit, and never disclosed any licensure issue during this period.

### E. Promises to Pay and Concealment

33. Defendant repeatedly promised payment and represented that payment was forthcoming.

34. Defendant represented she was working under another person's general contract license, without documentation.

35. Despite Defendant's continuous promises to pay and multiple requests for Plaintiff to continue working on behalf of Defendant, Plaintiff received no payment after October 2024.

## F. Post-Default Licensure Pivot

36. In May 2025 (more than a year after Plaintiff began working with Defendant in the new company), and only after Plaintiff demanded payment and discussed collection efforts, Defendant for the first time asserted she was not a licensed general contractor and accused Plaintiff of improper conduct.

## G. Admissions and Settlement Proposal

37. In July 2025, Defendant acknowledged financial distress, proposed settlement, and requested continued work so she could pay the debt.

38. Defendant simultaneously attempted to shift blame to Plaintiff for her own licensure issues.

## H. Reliance and Damages

39. Defendant's representations, omissions, and silence were material.

40. Plaintiff justifiably relied on Defendant's authorization, course of conduct, and acceptance of benefits.

41. Plaintiff has outstanding invoices owed in the amount of $50,781.99 for services rendered and costs advanced on behalf of Defendant.

42. Defendant failed and refused to pay.

## IV. COUNT I
## FALSE PRETENSES, FALSE REPRESENTATION, AND ACTUAL FRAUD
## 11 .S.C. § 523(a)(2)(A)

43. Plaintiff realleges paragraphs 1 through 42 as fully set forth herein.

44. Defendant knowingly made false representations and concealed material facts to induce Plaintiff's services.

45. Defendant obtained Plaintiff's services by false pretenses, false representations, and actual fraud, including misrepresenting Contractor's licensure status.

46. Defendant acted with intent to deceive Plaintiff.

47. Plaintiff justifiably relied on Defendant's misrepresentations.

48. Plaintiff sustained damages as a direct and proximate result of Defendant's fraud.

49. Accordingly, the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## V. COUNT II
## WILLFUL AND MALICIOUS INJURY
## 11 .S.C. § 523(a)(6)

50. Plaintiff realleges paragraphs 1 through 42 as fully set forth herein.

51. Defendant's conduct constitutes a willful, intentional, and malicious injury to Plaintiff and Plaintiff's interests.

52. Defendant knowingly engaged in conduct that was substantially certain to cause financial harm to Plaintiff.

53. The resulting debt is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests:

A. Enter judgment declaring that the debt owed to Plaintiff by Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6);

B. Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial, but not less than $50,781.99;

C. Award Plaintiff interest, attorneys' fees, and costs to the extent permitted by law or contract; and

D. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

DART SUPPLEMENT SOLUTIONS, LLC

BY: _____
SUSAN WILSON-TEAGUE, MANAGER
2408 SW NOTTINGHAM AVE
BENTONVILLE AR 72713
318-469-2414
SUSAN@DARTSUPPLEMENTSOLUTIONS.COM

FedEx

FROM: 13184692414
SUSAN WILSON-TEAGUE
DART SUPPLEMENT SOLUTIONS, LLC
2408 Southwest Nottingham Avenue
Bentonville AR 72712
US

SHIP DATE: 07JAN26
ACTWGT: 1.00 LB
CAD: 308600009/INET4760
DIMMED: 9 X 12 X 1 IN

TO MS. LINDA McCORMACK, CLERK OF COURT
UNITED STATES BANKRUPTCY COURT
35 East Mountain Street
ROOM 316
Fayetteville AR 72701
13184692414          REF:
INV:
PO:                  DEPT:

(US) 58HJ3/3A83/59F2



FedEx Ground
G
J2610251230010w

TRK# 8877 0401 9614

72701

9622 0019 0 (000 000 0000) 0 00 8877 0401 9614



Scan to learn how we can help make Earth a priority together.

THU 07/JAN 00:00
UNITED STATES BANKRUPTCY COURT
35 E MOUNTAIN ST
STE 316
FAYETTEVILLE AR
72701-5315-99  G

◄ Insert shipping document here.